IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALVIN DARDEN,
DIANE DARDEN,
        Plaintiffs,

v.                                                         Civil Action No. 3:12–cv–00188–JAG

THE AUTOMOBILE INSURANCE
COMPANY OF HARTFORD CONNECTICUT
*d/b/a Travelers*,
        Defendant.

## **MEMORANDUM OPINION**

This matter is before the Court on the defendant's motion for summary judgment. The plaintiffs have brought suit against the Automobile Insurance Company of Hartford Connecticut, doing business as Travelers ("Travelers"), for breach of an insurance policy on their rental property. Mr. and Mrs. Darden seek damages for renovation of the property and lost rental income in addition to an award of attorneys' fees. In support of summary judgment, Travelers argues that the policy exempts it from payment for intentional damage—in this case, arson—when the property has been vacant for thirty days or more. Because a material factual question remains as to whether the property was vacant, the Court denies Travelers' motion.

### **I.**     **Background**

Mr. and Mrs. Darden live in Kinston, North Carolina, and own a house at 310 Essex Place, in Richmond, Virginia ("the Essex property"), which they have historically rented as subsidized housing supported by the Richmond Redevelopment and Housing Authority. The plaintiffs maintain a homeowners' insurance policy through Travelers with a limit of $220,000 on the Essex property.

In October 2002, the plaintiffs entered into a lease for the Essex property with Louveka Towers, which was renewed annually through 2009. In the fall of 2009, Towers fell behind on her rent payments. On October 20, 2009, the plaintiffs filed an unlawful detainer action against her in the General District Court for the City of Richmond. The Court held a hearing on November 9, 2009, and awarded possession of the Essex property and a money judgment to the Dardens.

On October 29, 2009, Dominion Virginia Power turned off the power at the Essex property, and, on November 19, 2009, the Richmond Department of Public Utilities suspended the water supply. The Department had already disconnected the gas service in March 2009. Despite the total lack of utilities and the unlawful detainer suit, Towers and her family continued to live at the Essex property and store their belongings there for some time, the exact length of which is disputed.

On February 17, 2010, a fire broke out at the Essex property, causing severe damage.[1] The Richmond Department of Fire and Emergency Services investigated the fire and found that it was likely "incendiary," but the exact cause was unknown.[2] Through its own investigator, L. Don Christianson, Travelers also conducted an investigation. He concluded the fire was an act of arson and thus incendiary in nature. Christianson based this conclusion on the absence of any accidental ignition sources, the presence of heavy petroleum distillate on one sample of debris, and the need for a substantial heat source at the origin of the fire.

The Dardens immediately filed a claim with Travelers, but they received a letter denying coverage the following month. Travelers supported its denial with a clause in the insurance policy excluding losses due to an intentional and wrongful act committed in the course of

---

[1] The cost of repair came to $85,675. (Compl., Ex. C.)
[2] An incendiary fire is one that is deliberately set. *See* Black's Law Dictionary (9th ed. 2009).

2

vandalism or malicious mischief, if the dwelling has been vacant for thirty consecutive days prior to the loss.[3] The plaintiffs then filed a complaint against Travelers for breach of their homeowners' insurance contract in the Circuit Court for the City of Richmond. Travelers removed the case to this Court and ultimately moved for summary judgment.

## II. Standard of Review

Summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period of time for discovery, Rule 56(a) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims

---

[3] The exclusion reads:
    COVERAGE A—DWELLING and COVERAGE B—OTHER STRUCTURES.
    We insure against risk of direct loss to property described in Coverage A and B only if the loss is a physical loss to property. We do not insure, however, for loss:
    . . .

    2. Caused by:
    . . .

    d. Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

3

within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks & emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. Discussion

A single factual issue precludes summary judgment in this matter: whether the property was vacant for thirty days leading up to the fire, triggering the "Vandalism and Other Mischief" exclusion. Because it remains uncertain whether the Essex property met this requirement, the Court denies Travelers' motion for summary judgment.

While the standard for vacancy in Virginia has been articulated in multiple ways, one formulation is whether the building lacks the "amenities minimally necessary for habitation." *Govt. Employees Ins. Co. v. Medley*, 1998 WL 320392, 2 (W.D. Va. 1998) (citing *Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989)). *See also Vennemann v. Badger Mut. Ins. Co.*, 58 F.3d 772, 773–74 (8th Cir. 2003) ("The First and Fourth Circuits reject the definition of 'vacant' as 'devoid of contents' in the context of vacancy exclusion clauses; instead, these circuits focus on the presence or absence of objects or activities customary for the property's intended use.").

In its effort to prove vacancy, Travelers relies primarily on the lack of utilities at the Essex property and Louveka Towers' deposition, in which she claims to have moved out more

than thirty days prior to the fire. Travelers also argues that the property was evidently vacant because of graffiti inside the house and stolen copper pipe. Although someone did remove copper pipe and did disconnect the HVAC condenser, these acts of vandalism apparently occurred on or around the same time as the fire. (Def's Mem. Supp. Summ. J., Ex. 16.) Furthermore, there was no sign of forced entry on any of the doorways (besides a door that the firefighters broke down in the course of extinguishing the blaze). (Def's Mem. Supp. Summ. J., Exs. 9, 10 at 2–4, 27.) It is therefore difficult, if not impossible, to know when the graffiti actually occurred.

Other parts of the record underscore the factual uncertainty. In her deposition, Towers testified that she left the Essex property in November 2009 and did not return after moving out; she also said, however, that she does not know whether her relatives went to the house after that time. (Def's Reply to Mot. for Summ. J., Ex. 2 at 19:17–23:4.) One witness told the fire investigator that she saw Lisa Towers—Louveka Towers' sister and also a resident of the Essex property—and her boyfriend at the house on February 16, 2010. (Def's Mem. Supp. Summ. J., Ex. 10.) Lisa Towers was seen leaving the house that night, but Mr. Brown was not. (*Id.*)

Another witness told the investigator that she saw a young, African-American couple at the house two weeks before the fire and that neighbors saw "kids going in and out of the property weeks prior to the fire." (Def's Mem. Supp. Summ. J., Ex. 11 at 4–5.) Indeed, Louveka Towers was only one of four individuals who lived at the Essex property. Since witnesses saw other potential residents entering the house in the month leading up to the fire, the record does not conclusively establish that the property lay vacant for thirty days preceding the loss.

The Court also questions whether Louveka Towers' last date of residence was actually in November 2009. Mr. Darden said that "he heard [Towers] moved out on January 12, 2010."

(Def's Mem. Supp. Summ. J., Ex. 10; *see also* Ex. 11 at 4, 35.) And yet, when Darden changed the locks to the Essex property on January 15, 2010, he left two doors accessible to Ms. Towers, who maintained a key.[4] (Def's Mem. Supp. Summ. J., Ex. 2 at 36:13–37:9; Def's Mem. Supp. Summ. J., Ex. 7 at Interrogatory No. 7; *see also* Def's Reply to Mot. for Summ. J., Ex. 17.) Darden locked all the doors when he left the property, but the fire incident reports show that the doors were left unlocked, indicating *someone's* use of a key between his last visit and the fire. (Def's Mem. Supp. Summ. J., Ex. 7 at Interrogatory No. 7; Def's Mem. Supp. Summ. J., Exs. 9; Def's Mem. Supp. Summ. J., Ex. 11 at 4, 27, 35.)

Even more importantly, when Mrs. Darden visited the Essex property on January 23, 2010, she claims that "[Towers] came home[,] . . . and [Darden] asked her for the rent she owed or to vacate the property by the end of the month." (Def's Reply to Mot. for Summ. J., Ex. 17.) Given the defendant's reliance on Towers' deposition, the case becomes a classic swearing contest. It would be inappropriate to resolve this question of credibility on summary judgment.

Yet another fact precluding summary judgment is the presence of Ms. Towers' personal effects at the Essex property when the fire broke out. A property does not have to be "devoid of all contents" to meet the threshold for vacancy. *See Catalina Ents., Inc. Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 66 (4th Cir. 1995) ("Virtually no building could be considered vacant if the notion of vacancy is defeated by the existence of a paper clip, a stray pencil, or a light bulb."). At the same time, a particular set of personal items may be more or less likely to show vacancy.

---

[4] Towers claims in her deposition that she mailed the key back to the Dardens, but she does not say when. (Def's Mem. Supp. Summ. J., Ex. 2 at 20:22–25.) This gives rise to yet another factual question that would require the Court to make a credibility determination. As explained above, this sort of conclusion is not appropriate for the Court to make on summary judgment.

Here, the Dardens won their unlawful detainer suit against Towers, but they knew that she remained at the Essex property and continued to keep her belongings there. (Def's Mem. Supp. Summ. J., Ex. 7 at Interrogatories 7–9, 18, 22; *see also* Def's Reply to Mot. for Summ. J., Exs. 7, 17.) When the fire occurred, the house still contained furniture, a love seat, a table, bags of clothing, and a lawnmower. (Def's Mem. Supp. Summ. J., Ex. 9. *See also* Def's Mem. Supp. Summ. J., Ex. 11 at 3.) The fire investigator's photographs show appliances in the kitchen, an end-table with books and magazines in the hallway, and various other personal items in the basement. (Def's Mem. Supp. Summ. J., Ex. 11 at 11–16.) The Court cannot conclude that the property lacked the "amenities minimally necessary for habitation" with all these personal effects on hand.

The cases that Travelers relies on to establish vacancy differ from the instant case on this very point. *See Catalina Ents., Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 64 (4th Cir. 1995) (finding a commercial warehouse vacant when it contained just one piece of scaffolding, a single table, and an abandoned truck); *Gov. Employees Ins. Co. v. Medley*, 1998 WL 320392 (W.D. Va. 1998) (finding a house vacant that had been condemned and overtaken by vandals); *Frazier v. State Farm Fire & Cas. Co.*, 957 F. Supp. 816, 818 (W.D. Va. 1997) (finding a house vacant when its only contents were a rug, some mattresses, curtains, and a gas range); *Watertown Fire Ins. Co. v. Cherry*, 3 S.E. 876, 877 (Va. 1887) (finding a property vacant when the tenant had moved, changed the address on her insurance policy, and left only "fodder" behind). None of the properties in these other cases could be said to have contained the incidents of day-to-day life.

Although the utilities at the Essex property were turned off and the house was generally in a state of disrepair, the Court cannot decide, as a matter of law, that it lacked the amenities

minimally necessary for habitation, especially when one considers the property's baseline condition. There is no question, after all, that Towers and others lived without gas between March and at least November 2009, and they continued living there without water and electricity for at least some time thereafter. Though many individuals might not be able to bear these circumstances, the question before the Court is whether it lacked the amenities *minimally necessary* for habitation. The Court cannot say that it did. It is therefore up to a jury to determine when, if ever, the residents vacated.

## IV. Conclusion

The Court shall deny the defendant's motion for summary judgment because there remains a question of whether the Essex property was vacant for thirty consecutive days prior to the fire on February 17, 2010.

The Court shall enter an appropriate order.

Date: October 2, 2012
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge

8